# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RENFRO,<br><br>Plaintiff,<br><br>v.<br><br>J.G. BOSWELL CO. INC., et al.,<br><br>Defendants. | Case No. 1:17-cv-01069-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING DEFENDANTS' REQUEST FOR RULE 11 SANCTIONS; DENYING PLAINTIFF'S REQUEST FOR SANCTIONS; AND DISMISSING PLAINTIFF'S COMPLAINT WITHOUT LEAVE TO AMEND FOR FAILURE TO STATE A COGNIZABLE CLAIM AND AS A SANCTION FOR FAILURE TO COMPLY WITH COURT ORDERS<br><br>(ECF Nos. 10, 13, 14, 15, 16, 28, 20)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

Plaintiff Christopher Renfro ("Plaintiff"), appearing pro se and in forma pauperis, filed the complaint in this action on August 9, 2017. (ECF No. 1.) Currently before the Court is specially appearing Defendants motion for Rule 11 sanctions and a show cause order regarding Plaintiff's failure to comply with Court orders issued in this action.

A hearing on Defendants' motion and the order to show cause was held on December 20, 2017. Plaintiff appeared pro se. Counsel Sean O'Rourke and William Bruce were present, and Thomas Fitch appeared telephonically for Defendants. Having considered the moving,

1

opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the December 20, 2017 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

## I.

## BACKGROUND

Plaintiff was employed as a seasonal tomato driver for Defendant Young's Commercial Transfer, Inc. ("Defendant Young's") for one month in January 2014. (First Am. Compl. ("FAC") 14, 25,[1] ECF No. 13.) From March 8, 2014 through June 30, 2014, Plaintiff worked as a long haul truck driver for Defendant Swift Transportation ("Defendant Swift"). (FAC 14.) Plaintiff worked for Defendant Young's from July 22, 2014, through October 13, 2014. (Decl. of Christopher Refro in Opp. for Mot. For Sanctions Pursuant to FRCP Rule 11 by Specifically Appearing Defs. And Request for Monetary Sanctions ¶ 1, ECF No. 15 at 15-17.)

On August 22, 2016, Plaintiff filed an action, <u>Christopher E. Renfro, et al. v. J.G. Boswell Company</u>, No. 16C-0241, in Kings County Superior Court.[2] The case can be accessed from the Kings County Superior Court's website, using the "Smart Search" option. <u>See</u> https://cakingsodyprod.tylerhost.net/CAKINGSPROD. In that action, Plaintiff brought claims against Defendants J.G. Boswell Co.; Lakeland Aviation; H & G Farms, Inc.; Young's; and Erik J. Hansen alleging negligence, personal injury claims, strict liability res ipsa loquitur, negligence per se, gross negligence, and negligent infliction of emotional distress. (Compl., ECF No. 10 at 18-26.)

On March 22, 2017, Plaintiff filed a complaint in the Eastern District of California. <u>Renfro, et al. v. J.G. Boswell Co. Inc.</u>, No. 1:17-cv-00418-LJO-EPG (E.D. Cal. March 22, 2017). The complaint was brought against twenty-seven defendants: J.G. Boswell Co Inc.; J.G. Boswell Tomato Co. Kern; J.G. Boswell Tomato Co.-Kings; Erick J. Hansen; H & G Farms; Lakeland Aviation; Young's Commercial Transfer, Inc.; Randy Daniels; Tony Cisneros; Zach Johnson;

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2] Judicial notice may be taken "of court filings and other matters of public record." <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

Gary Johnson; Larry Sailors; Gabby Manzo; Jesse Nunez; Juan Doe; Cruz Doe; Ben Barczak; National Interstate Insurance Co; Dr. Thomas Leonard; MES Solutions; Tim Niswander; Rusty Lantsberger; Kings County Agriculture Department; Daniel Agulair; Stockwell, Harris, Wolverton; and Carlos Duran. <u>Id.</u> Defendants filed a motion to remand and the action was remanded to the state Court on July 7, 2017. <u>Renfro, et al. v. J.G. Boswell Co. Inc.</u>, No. 1:17-cv-00418-LJO-EPG (E.D. Cal. July 7, 2017).

On August 9, 2017, Plaintiff filed the instant action against Defendants J.G. Boswell Co Inc.; J.G. Boswell Tomato Co. Kern; J.G. Boswell Tomato Co.-Kings; Erick J. Hansen; H & G Farms; Lakeland Aviation; Young's Commercial Transfer, Inc.; Randy Daniels; Tony Cisneros; Zach Johnson; Gary Johnson; Larry Sailors; Gabby Manzo; Jesse Nunez; Juan Doe; Cruz Doe; Ben Barczak; National Interstate Insurance Co; Dr. Thomas Leonard; MES Solutions; Tim Niswander; Rusty Lantsberger.; Kings County Agriculture Department; Daniel Agulair; Stockwell, Harris, Wolverton; and Carlos Duran alleging violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act; EPA application of Pesticides; and Americans with Disabilities Act. (ECF No. 1.) On September 14, 2017, Plaintiff's complaint was screened and dismissed with leave to amend for failure to state a claim. (ECF No. 6.) Plaintiff filed a motion for an extension of time to file his amended complaint which was granted on October 19, 2017. (ECF Nos. 7, 8.)

On October 20, 2017, Defendants Lakeland Aviation, Inc.; Erick J. Hansen; H & G Farms; J.G. Boswell Co.; J.G. Boswell Tomato Co Kings; and J.G. Boswell Tomato Co. Kern specially appeared to file a notice that they had served Plaintiff with a Rule 11 motion. (ECF No. 9.) On November 16, 2017, Defendants specially appeared to file a motion for sanctions pursuant to Rule 11 of the Federal Rule of Civil Procedure. (ECF No. 10.) The motion was referred to the undersigned on November 17, 2017. (ECF No. 11.)

On November 29, 2017, Plaintiff filed a first amended complaint against 27 defendants: J.G. Boswell Co Inc.; J.G. Boswell Tomato Co. Kern; J.G. Boswell Tomato Co.-Kings; Erick J. Hansen; H & G Farms; Lakeland Aviation; Young's Commercial Transfer, Inc.; Randy Daniels; Tony Cisneros; Zach Johnson; Terry Johnson; Larry Sailors; Alex Manzo; Jesse Nunez; Juan

Doe; Cruz Doe; Gabby Manzo; Ben Barczak; National Interstate Insurance Co; Dr. Thomas Leonard; MES Solutions; Tim Niswander; Rusty Lantsberger; Kings County Agriculture Department; Daniel Agulair; and Stockwell, Harris, Wolverton, Humphrey alleging causes of action for RICO, 18 U.S.C. § 1961 et seq.; conspiracy against rights, 18 U.S.C. § 241; and deprivation of rights under color of law, 18 U.S.C. § 242.  (ECF No. 13.)

The first amended complaint was found not to comply with the orders granting Plaintiff leave to amend and on November 30, 2017, an order was filed requiring Plaintiff to show cause why sanctions should not be imposed for his failure to comply with court orders.  (ECF No. 14.)

On December 4, 2017, Plaintiff filed an opposition to Defendants' motion for sanctions pursuant to Rule 11.  (ECF No. 15.)  On December 7, 2017, Defendants filed a reply to the opposition.  (ECF No. 16.)  In response to the Court's order requiring Defendants to supplement the motion for sanctions, Defendants filed a supplement on December 18, 2017.  (ECF No. 18.)  On December 21, 2017, Defendant filed a proof of service for the motion for Rule 11 sanctions.  (ECF No. 20.)

## II.

## MOTION FOR RULE 11 SANCTIONS

### A.    Legal Standard

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, by presenting a pleading, written motion, or other paper to the Court, the "attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:"

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. Proc. 11(b).

Rule 11 provides for the imposition of sanctions when the Court finds that the Rule has been violated. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. Proc. 11(c)(1). A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

"Rule 11 is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis; no showing of bad faith or subjective intent is required." Truesdell v. S. California Permanente Med. Grp., 209 F.R.D. 169, 173–74 (C.D. Cal. 2002). Rule 11 is governed by an objective standard of reasonableness. Conn v. Borjorquez, 967 F.2d 1418, 1421 (9th Cir. 1992). The question is therefore, at the time that the paper was presented to the court, did it lack evidentiary support or contain frivolous legal arguments. Truesdell, 209 F.R.D. at 175. "If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed." Conn, 967 F.2d at 1421 (quoting Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986)). "Under the plain language of the rule, when one party files a motion for sanctions, the court must determine whether any provisions of subdivision (b) have been violated." Warren v. Guelker, 29 F.3d 1386, 1389 (9th Cir. 1994).

### B.      Defendants' Motion for Rule 11 Sanctions Should be Denied

Defendants move for sanctions under Rule 11 arguing that Plaintiff has been informed by the state court that his personal injury claims are barred by the statute of limitations. Defendants also contend that the district court should find that it does not have subject matter jurisdiction under the Rooker-Feldman Doctrine.

Where a motion for sanctions has been filed, Rule 11 provides for a mandatory 21 day safe harbor period before the motion is filed with the court. Fed. R. Civ. Proc. 11(c)(2). The motion must be served on the offending party but not filed or presented to the court if the challenged filing is withdrawn or corrected within 21 days after service. Id. Defendant has filed a proof of service indicating that the motion was served on Plaintiff on October 20, 2017, twenty one days prior to the motion being filed. (ECF No. 20.)

On November 29, 2017, Plaintiff filed a first amended complaint which only alleges federal causes of action. Accordingly, Plaintiff corrected the statute of limitations deficiencies in the complaint within the safe harbor period and deleted any request for this Court to exercise supplementary jurisdiction over his state court claims. Defendants' request for Rule 11 sanctions based upon Plaintiff requesting this Court to consider his state court claims which are barred by the statute of limitations should be denied.

1.    Plaintiff's RICO claim is not barred by the statute of limitations

"The key question in assessing frivolousness is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law." Conn, 967 F.2d at 1421 (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1127 (9th Cir.1989)). Here, Defendants argue that Plaintiff has committed a Rule 11 violation because his claims are beyond California's statute of limitations for personal injury claims and Plaintiff has been informed of such by the state court. However, in this first amended complaint Plaintiff has deleted his request that this Court exercise supplemental jurisdiction over his state court claims.

Plaintiff's first amended complaint seeks to bring a cause of action under RICO. The statute of limitations for a civil RICO claim is four years from when the plaintiff knew or should have known of the underlying injury. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987); Rotella v. Wood, 528 U.S. 549, 552 (2000); Pincay v. Andrews, 238 F.3d 1106, 1109 (9th Cir. 2001). For civil RICO claims, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella, 528 U.S. at 555.

As Defendants point out in their motion, Plaintiff alleges that he worked for Defendant Young's from July 22, 2014, through October 13, 2014. The incidents alleged to constitute a

1  RICO violation occurred on July 22, 2014, or afterward.  Therefore, Plaintiff's RICO claims in

2  this action are not barred by the statute of limitations.

3          2.      Plaintiff's Claims are not precluded by the Rooker-Feldman Doctrine

4          Defendants argue that the Rooker-Feldman doctrine precludes this Court from

5  adjudicating Plaintiff's claims.

6          It is well established that a federal district court lacks jurisdiction to hear appeals from

7  state court decisions.  Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003) (citing Rooker

8  v. Fidelity Trust Co., 263 U.S. 413 (1923)).  In Rooker, the plaintiff alleged an injury by a state

9  court judgment which was issued in violation of the Contract Clause of the United States

10  Constitution and due process of law and equal protection guaranteed under the Fourteenth

11  Amendment.  Rooker, 263 U.S. at 414-15.  The Rooker court held that, even if the judgment was

12  wrong, the Supreme Court was the only federal court that had jurisdiction to reverse or modify

13  the state court judgment.  Id. at 416.

14          In D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), the plaintiffs requested an

15  exemption from a requirement for admission to the bar and were seeking to challenge the denial

16  of admission.  The Court of Appeals dismissed their complaints and the plaintiffs appealed to the

17  Supreme Court.  Feldman, 460 U.S. at 474.  After determining that the proceedings were judicial

18  in nature, the Supreme Court found that the complaint alleging that the denial of their request for

19  waiver was inextricably intertwined with the decision to deny their waiver petitions.  Id. at 486-

20  87.  "If the constitutional claims presented to a United States District Court are inextricably

21  intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's

22  application [for relief], then the District Court is in essence being called upon to review the state

23  court decision.  This the District Court may not do."  Id. at 484 n.16.  The district court does not

24  have jurisdiction "over challenges to state court decisions in particular cases arising out of

25  judicial proceedings even if those challenges allege that the state court's action was

26  unconstitutional."  Id. at 486.  Together these cases have become known as the Rooker-Feldman

27  doctrine.  In deciding whether the Rooker-Feldman doctrine applies in an action brought in

28  federal court, we consider if the injury allegedly suffered by Plaintiff resulted from the state

court judgment itself or if it is distinct from that judgment.  Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996).

The Rooker–Feldman may apply where the parties are not directly contesting the merits of a state court decision, because the doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008).  A defacto appeal is where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." Bianchi, 334 F.3d at 898.  "The Rooker-Feldman doctrine prevents lower federal courts from exercising jurisdiction over any claim that is 'inextricably intertwined' with the decision of a state court, even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principles.' " Bianchi, 334 F.3d at 901 n.4; see also Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001) (the Ninth Circuit has held that the Rooker-Feldman doctrine applies even when the challenge to the state court decision involves federal constitutional issues).

The application of the Rooker–Feldman doctrine is necessarily limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  In this instance, the state court proceedings have not terminated; and Plaintiff is not seeking a de facto appeal of the state court rulings.  Rather, Plaintiff is seeking to bring federal claims based upon the same facts underlying his state court action.  The Supreme Court has held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Exxon Mobil Corp., 544 U.S. at 292.  "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293.  In this

instance, Plaintiff is alleging an independent claim under RICO which would provide this Court with original jurisdiction over the action. The Court finds that the <u>Rooker-Feldman</u> doctrine does not preclude Plaintiff from bringing his RICO claim in federal court. Defendants' motion to have this action dismissed as precluded by the <u>Rooker-Felman</u> doctrine should be denied.

        3.    <u>Plaintiff's Opposition</u>

In his opposition to Defendants' motion, Plaintiff argues that the statute of limitations does not bar his state court claims and this issue is currently being litigated in the state court. On November 29, 2017, Plaintiff filed a first amended complaint bringing only federal claims. The issue before this Court is whether the claims alleged in the first amended complaint are barred by the statute of limitations. While Plaintiff states that he is fine with this Court reviewing the state court findings after the state case is resolved, the state claims are not being adjudicated in the current action and cannot be reviewed by this Court. Additionally, any federal causes of action that Plaintiff has filed in the state court case will not be adjudicated or reviewed by this Court.

Plaintiff requests that "sanctions be reserved" for him and seeks $389.00 for missed work and paperwork. However, Plaintiff originally requested that this Court exercise supplemental jurisdiction over his state court claims.

As Plaintiff states in his opposition, the injuries he complains of occurred three years ago and under California law a claim for personal injury must be filed within two years of the date of injury or after the plaintiff becomes aware of his injury. Cal. Code Civ. Proc. § 340.8. On April 4, 2017, Plaintiff's first amended complaint was stricken by the state court on Defendants' motion to strike because the action was not filed within the statute of limitations. (Notice of Mot. and Mot. to Strike Pls.' First Am. Compl., ECF No. 10 at 81-86; Order on Defs.' Mot. to Strike Pls. First Am. Compl., ECF No. 10 at 90-91.) The state court has found that Plaintiffs' state law claims are barred by the statute of limitations and the issue is currently being litigated in the state court. (Tentative Rulings for Wednesday, November 8, 2017 for Department 8, Judge LaPorte presiding, ECF No. 15 at 9.) The Court does not find that the Defendants' motion for Rule 11 sanctions was frivolous based upon Plaintiff's request in the original complaint for this Court to exercise supplemental jurisdiction over his state court claims. Plaintiff's request for

1  sanctions should be denied.

2  ## III.

3  ## SCREENING

4  ### A.  Legal Standard

5  Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court

6  determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which

7  relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

8  such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000)

9  (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners);

10 Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis

11 proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

12 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis

13 complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998)

14 (affirming sua sponte dismissal for failure to state a claim).  The Court exercises its discretion to

15 sua sponte screen the plaintiff's complaint in this action to determine if it "i) is frivolous or

16 malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

17 against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

18 In determining whether a complaint fails to state a claim, the Court uses the same

19 pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a

20 short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R.

21 Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the

22 elements of a cause of action, supported by mere conclusory statements, do not suffice."

23 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.

24 544, 555 (2007)).

25 In reviewing the pro se complaint, the Court is to liberally construe the pleadings and

26 accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89,

27 94 (2007).  Although a court must accept as true all factual allegations contained in a complaint,

28 a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A]

complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

Similarly, the court may dismiss a claim as factually frivolous when the facts alleged lack an arguable basis in law or in fact or embraces fanciful factual allegations. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Further, a claim can be dismissed where a complete defense is obvious on the face of the complaint. Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984).

## B. First Amended Complaint Allegations

The first amended complaint names 27 defendants: Defendants J.G. Boswell Co Inc.; J.G. Boswell Tomato Co. Kern; J.G. Boswell Tomato Co.-Kings; Erick J. Hansen; H & G Farms; Lakeland Aviation; Young's Commercial Transfer, Inc.; Randy Daniels; Tony Cisneros; Zach Johnson; Terry Johnson; Larry Sailors; Alex Manzo; Jesse Nunez; Juan Doe; Cruz Doe; Gabby Manzo, Ben Barczak; National Interstate Insurance Co; Dr. Thomas Leonard; MES Solutions; Tim Niswander; Rusty Lantsberger.; Kings County Agriculture Department; Daniel Agulair; and Stockwell, Harris, Wolverton, Humphrey. (First Am. Compl. ("FAC") 2, ECF No. 13.) Plaintiff brings causes of action for RICO, conspiracy against rights, 18 U.S.C. § 241; and deprivation of rights under color of law, 18 U.S.C. § 242. (Id.) Later in his complaint, Plaintiff also alleges violation of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").[3] (Id. at 14.)

Plaintiff was injured while working for Defendant Young's. (Id.) Defendant Young's is a logistics company which has over 800 employees and a dispatch office at J.G. Boswell Tomato Co-Kings. (Id.) J.G. Boswell Tomato Co. Inc. is a privately owned farm with 300 shareholders and they produce the world's second largest tomato crop. (Id.) J.G. Boswell Tomato Co-Kern and J.G. Boswell Tomato Co-Kings are processing plants. (Id. at 3.) Erik Hansen is the owner,

---

[3] Although Plaintiff's complaint included an allegation of violation of FIFRA and Plaintiff argued in his opposition to the motion for sanctions that he was okay with the Court addressing his state court claims, at the December 20, 2014 hearing, Plaintiff confirmed that he was only intending to bring claims based on RICO and Title 18 sections §§ 241 and 242 in the first amended complaint.

operator and pilot of H. & G Farms, and Lakeland Aviation. (Id.) Lakeland Aviation is a crop dusting company for hire to apply chemicals to fields via airplanes. (Id.)

Plaintiff was employed by Young's to drive tomato trucks that were dispatched out of J.G. Boswell Tomato Co-Kings location. (Id. at 4.) Plaintiff alleges that he is disabled by ulnar nerve damage to his right hand. (Id. at 19 n.1.) The following defendants all work for Defendant Young's. (Id. at 4-5.) Randy Daniels is the Human Resource Chief Executive Officer. (Id. at 4.) Tony Cisneros, Terry Johnson, and Zachary Johnson are supervisors. (Id.) Alex Manzo, Larry Sailors, Juan Doe and Cruz Doe are dispatchers. (Id. at 4-5.) Gabby Manzo is primary secretary. (Id. at 5.) Jesse Nunez is safety manager. (Id.)

Ben Barczak is an insurance adjuster at National Interstate Insurance. (Id.) National Interstate Insurance acts as claims adjuster for worker's compensation claims made by injured workers at Defendant Young's. (Id. at 6.) Dr. Leonard Thomas is a doctor who is associated with MES Solutions. (Id.)

Tim Niswander and Rusty Lantsberger are employed at the Kings County Agricultural Office. (Id.)

Daniel Aguilar is an attorney who practices Workman's Compensation law at Stockwell, Wolverton, Harris, Humphrey. (Id. at 7.)

Plaintiff was employed by Defendant Young's for one month in January as a seasonal tomato driver. (Id. at 14-15.) From March 8, 2014, through June 30, 2014, Plaintiff worked for Swift Transportation as over the road, long haul trucker. (Id. at 15.) Plaintiff fell, injuring his ulnar nerve, and was placed on light duty. (Id.)

Plaintiff followed up on an ad for tomato haulers at Defendant Young's. (Id.) When he was released to return to work, Plaintiff took a job as a truck driver for Defendant Young's. (Id.) Plaintiff initially interviewed as a dispatcher. (Id. at 25.) Carlos Duran told Plaintiff there were chemicals out there. (Id.) Plaintiff replied yeah, but they would tell you about them. (Id.) Randy Daniels told Plaintiff that he was having trouble with a group within the company that were alienating drivers from good loads and causing a high turnover. (Id.) Mr. Daniel told Plaintiff it was his first year as an HR person and he was an ex-preacher. (Id.) Mr. Daniel told

1  Plaintiff that they needed a dispatcher who could get the tomatoes from the field and Plaintiff

2  told him he really wanted to be a driver.  (Id.)  Plaintiff was hired as a truck driver.  (Id.)

3  Plaintiff worked twelve to fifteen hours per day.  (Id. at 15.)  There was no training on

4  working with chemicals at Boswell, where Plaintiff was working.  (Id.)  Plaintiff was provided

5  with a work manual and a contract promising a bonus of ten percent of his gross earned income

6  if he finished the season.  (Id.)  Plaintiff told Zach Johnson and Tony Cisneros about his

7  disability and they said they would make accommodations, for example a truck with good

8  shifters or an automatic truck and accommodation for doctor's appointments.  (Id. at 25.)

9  The choice loads were given to Northern Hispanic gang members and other employees

10  received lesser paying loads.  (Id. at 15.)  Plaintiff was moved from a lesser paying load to a

11  higher paying load on August 22, 2014.  (Id.)  As Plaintiff was driving from the tomato plant to

12  the field, a crop duster flew over the top of his truck and sprayed him with chemicals.  (Id.)

13  Plaintiff gasped, rolled up the windows, and closed the air conditioning unit.  (Id.)  Plaintiff held

14  his breath, gasped for clean air, turned on the air conditioner unit, and then pulled his truck over

15  to vomit.  (Id.)  There was blood on Plaintiff's shirt from wiping his mouth and when he got to

16  the dispatch office he told Defendant Young's manager, who was an ear away from Boswell

17  employees, that they were crop dusting that area.  (Id.)  The dispatcher, Juan, told Plaintiff to

18  make another load in the same area where they were spraying.  (Id. at 15-16.)  Plaintiff headed

19  out to make another load.  (Id. at 16.)  Plaintiff encountered issues with chemicals several more

20  times that evening.  (Id.)  The chemicals were so thick he could not see out of the windows.  (Id.)

21  Plaintiff suffered blood in his urinary tract and stools.  (Id.)  Plaintiff was transferred two days

22  after he requested a change or he would quit.  (Id.)

23  The next morning, Larry Sailors arrived and was asked why ten thousand fish, thousands

24  of birds, and hundreds of other creatures for one hundred miles were dead on the ground.  (Id. at

25  24.)  Larry Sailors said it was from pesticides and when asked why they had the truck drivers

26  driving through it, he said, "don't worry it will not hurt you."  (Id.)

27  Afterward Plaintiff had a few more problems and he complained that a truck issued to

28  him smelled like alcohol.  (Id. at 16.)  On another occasion, Plaintiff had trouble shifting gears

because of his disabled right arm.  (Id.)

Plaintiff was punched by a man standing with Zachary Johnson.  (Id. at 16.)  Zachary Johnson stopped him and said, "Go ahead, Willy" and the man punched Plaintiff in the liver.  (Id. at 19.)  Plaintiff turned them into the Department of Transportation for weight violations and had them thrown out of Paramount Farms.  (Id.)

Plaintiff told Paula Watson that he was working undercover and watching her for Lieutenant Watson, who was her husband.  (Id. at 27.)  The next day, Zachary Johnson had Plaintiff drive a truck with a police bar on it that was filed with chemicals coming out of the air conditioner that injured Plaintiff's right eye, hearing in his right ear, and burned his sinuses.  (Id. at 16, 27.)  Plaintiff believes that this was punishment for being a witness, whistle blower, and working with the police.  (Id. at 16.)  Plaintiff made an incident report when he returned to the shop.  (Id. at 27.)  Gary or Larry Sailors took the report and Plaintiff asked for another truck but was required to take the rest of the day off.  (Id.)  Jess Nunez was called and told Plaintiff that they could not get him medical treatment until Monday.  (Id. at 28.)  On Monday, the doctor found issues with Plaintiff's eye and ear and had him take time off work.  (Id.)

Plaintiff was sent to the hospital some three days later and he wrote "Hit by Crop Duster's" and wrote about the chemicals he was exposed to on the intern sheet.  (Id. at 16.)  Plaintiff was given shots, placed on medication and returned to work.  (Id.)  Randy Daniels stated that he thought Plaintiff would have been out of work longer than that.  (Id.)

The week Plaintiff returned to work a man on methamphetamine tried to hit Plaintiff with a pipe.  (Id. at 16, 28.)  Plaintiff was recovering from an incident with the pipe and J.G. Boswell and Defendant Young's tried to cover it up until the police were called.  (Id. at 19.)  A supervisor for Boswell said, "You should stand your ground."  (Id.)  Plaintiff was sent home without pay for the attack.  (Id.)

As the weeks progressed Plaintiff began to feel fatigued after a few hours of work and would have to pull over to sleep.  (Id. at 28.)  The side effects of the chemical exposure left him off balance.  (Id.)

Plaintiff was treated by the doctors until December 2014, and Defendant Young's paid

his bills.  (Id. at 16.)  Plaintiff finished the season but was not offered the opportunity to come back as promised.  (Id.)  Plaintiff did not receive his bonus check and was forced to sign a form stating that he had not been injured while working for Defendant Young's to get his final paycheck.  (Id.)  Plaintiff wrote to Defendant Young's who sent him a calendar.  (Id. at 35.)

Plaintiff went to worker's compensation and Ben Barczak from National Interstate Insurance was assigned his case.  (Id. at 17.)  Mr. Barczak stated that he would accept the case, but when he did not know what an ENT was he denied the claim.  (Id.)  Plaintiff was informed that the claim had been denied.  (Id.)  Mr. Barczak requested a doctor's report which recommended sending Plaintiff to an eye and sinus specialist.  (Id. at 28.)  The insurance took forever to diagnose Plaintiff, finding burning to the area of the face, a benign 5 mm cyst growing under his eye, and he was given antibiotics.  (Id. at 17.)

After the worker's comp claim was denied, Plaintiff became worse.  (Id. at 29.)  Plaintiff lost his insurance coverage and was without an ENT.  (Id. at 17.)  Plaintiff begged Mr. Barczak for help and was denied.  (Id.)  Plaintiff begged Randy Daniels to call Gabby Manzo who deleted his messages or did not convey them.  (Id.)  Plaintiff went to the worker's compensation appeals board and they were not interested in giving him medical treatment.  (Id.)  Plaintiff was told by worker's compensation that the contract Plaintiff signed negated all damages from Defendant Young's and he could take a settlement or get nothing.  (Id.)  Plaintiff contends this was an adhesion contract.  (Id. at 24.)

Mr. Aguilar threatened to destroy Plaintiff every step of the way, which he did by getting rid of doctors, sending correspondence that acted as ex parte communication with the doctors, hiding medical records from Plaintiff, and disrupting any chance of Plaintiff receiving medical care.  (Id. at 17.)  Mr. Aguilar manipulated doctor's reports and said he was acting on the advisement of Defendant Young's.  (Id. at 20.)  Plaintiff was contacted by Mr. Aguilar who told him that if he did not settle he would not receive a dime.  (Id. at 29.)  Mr. Aguilar said that he talked to Defendant Young's and they thought Plaintiff was faking.  (Id.)  Mr. Aguilar had been told by Mr. Barczak to lose the problem.  (Id.)

Dr. Richards was relieved.  (Id. at 20.)  Dr. Markovitz was stricken by sending him a

report that Plaintiff had sent Mr. Aguilar. (Id.) Mr. Aguilar had Dr. Leonard do an independent medical examination of Plaintiff. (Id. at 29.) Dr. Leonard recorded findings that were consistent with blood poisoning but wrote them off as rashes. (Id.) Dr. Leonard sexually assaulted Plaintiff by groping his breast and his report was never provided to Plaintiff. (Id. at 20, 29.) Dr. Leonard refused to give Plaintiff any medical records and proper diagnosis of issues with chemical exposure. (Id. at 17.) Mr. Aguilar received Dr. Leonard's report and withheld it for several months. (Id. at 20, 29.) Dr. Leonard's report states that spots on Plaintiff's legs which point toward blood poisoning are more like from a rash which is fraud and misrepresentation. (Id. at 21.) Dr. Leonard was found not to be licensed to do business in Clovis, California; and MES Solutions is not licensed to do business in several counties. (Id. at 20-21.) Plaintiff discovered that MES Solutions has been sued for fraud in Texas with no business license or DBA on file with the state. (Id. at 30.) MES Solutions has not sent Plaintiff his medical records despite his request that they do so. (Id.)

After three years all the doctors say there is little if any chance of recovery. (Id. at 17.) Other drivers experienced the same outcome at Defendant Young's. (Id.) Some were injured and died, like Mike Edsell. (Id.) Another driver does not remember what happened but had a child born with birth defects. (Id.)

Plaintiff called the Kings County Agriculture Commissioner to ask for information regarding what had been sprayed and was told to make an e-mail request. (Id. at 18, 28.) The Agriculture Commissioner replied with several types of chemicals and none of the chemicals are to be used when people are driving through the area. (Id. at 28.) The pilots did not deny that it happened only that it was an allergic reaction to sulfur based chemicals that were being sprayed. (Id. at 18.) Plaintiff called Eric Hansen and explained the symptoms he was having. (Id. at 38.) Mr. Hansen told Plaintiff that the chemicals would not hurt him and it was just an allergic reaction to the sulfur. (Id.)

Plaintiff was told by the agriculture commissioner that an investigation would begin after several people called in 2014 through 2016. (Id. at 18.) The agriculture commissioner called and talked to Erik Hansen. (Id. at 38.) Plaintiff had an interview with Rusty Lantsberger. (Id.)

1    As Plaintiff interviewed Mr. Lantsberger as to the requirements to become a crop duster, Mr.

2    Lantsberger admitted that they would not swab the truck for chemicals because of the cost.  (Id.)

3    In September of 2016, Plaintiff was told that an investigation was not done and the pilot had not

4    been written up because there was no physical proof.  (Id. at 18.)  Plaintiff sent a letter of intent

5    to sue and filed a government tort claim against Kings County Department of Agriculture.  (Id.)

6           At some time, Tim Niswander was called and recited the same issues.  (Id.)  There was

7    no reprimand and it was stated "sometimes people get sprayed;" the Kings County D.A. was

8    called and so was the Kings County Board of Supervisors but they have not responded to the

9    intent to sue letter.  (Id.)

10          Plaintiff states that it was not until 2015 that the chemicals really hurt him.  (Id. at 40.)

11   **C.     Plaintiff's First Amended Complaint Fails to State a Cognizable Claim**

12          1.      Title 18 United States Code sections 241 and 242

13          To the extent that Plaintiff brings this action alleging conspiracy against rights, 18 U.S.C.

14   § 241; and deprivation of rights under color of law, 18 U.S.C. § 242, (FAC at 2), the first

15   amended complaint fails to state a cognizable claim.  Title 18 of the United States Code codifies

16   statutory crimes and criminal procedure.  The fact that a federal statute has been violated does

17   not automatically give rise to a private right of action.  Touche Ross & Co. v. Redington, 442

18   U.S. 560, 568 (1979).  In determining whether a private right of action exists, the court is to

19   determine whether Congress intended to create a private right of action.  Id.  Therefore, unless a

20   specific statute provides for a private right of action, courts have found that violations of Title 18

21   are properly brought by the United States government through criminal proceedings and not by

22   individuals in a civil action.  Abou–Hussein v. Gates, 657 F.Supp.2d 77, 79 (D.D.C.2009);

23   Prunte v. Universal Music Grp., 484 F. Supp. 2d 32, 42 (D.D.C. 2007); Smith v. Gerber, 64

24   F.Supp.2d 784, 787 (N.D. Ill. 1999).

25          Conspiring to deprive an individual of their constitutional rights is addressed in 18 U.S.C

26   § 241.  A violation of section 241 is punished by fine or imprisonment of not more than 10 years.

27   18 U.S.C. § 241.  Depriving a person of their rights under the color of law is codified in 18

28   U.S.C. § 242 which makes it unlawful to deprive any person of his constitutional rights because

of the person's alienage, color or race. Violation of section 242 is punished by fine or imprisonment of not more than one year, or more if specified circumstances exist. 18 U.S.C. § 242.

Plaintiff cannot bring suit against the defendants for violation of these sections of Title 18 as they do not provide for a private right of action. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §§ 241 and 242 provide no basis for civil liability); Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (same); Salem v. Arakawa, No. CV 15-00384 LEK-KSC, 2016 WL 1043050, at *6 (D. Haw. Mar. 15, 2016) ("It is well-established that 'Plaintiffs, as private citizens, lack standing to bring claims under criminal statutes'"). The Court recommends that Plaintiff's claims for violation of Title 18 U.S.C. §§ 241 and 242 be dismissed without leave to amend.

### 2. Federal Insecticide, Fungicide, and Rodenticide Act

In his amended complaint, Plaintiff states that he is bringing a cause of action for violation of FIFRA. (FAC at 14.) The FIFRA, 7 U.S.C. §§ 136–136y is a "comprehensive regulatory scheme aimed at controlling the use, sale, and labeling of pesticides."[4] Nathan Kimmel, Inc. v. DowElanco, 275 F.3d 1199, 1204 (9th Cir. 2002); see also Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency, 847 F.3d 1075, 1086 (9th Cir. 2017) (addressing FIFRA's procedural requirements). FIFRA "requires that all such chemicals sold in the United States be registered with EPA, which accepts registration only upon a finding that the poison 'when used in accordance with widespread and commonly recognized practice . . . will not generally cause unreasonably adverse effects on the environment.' " No Spray Coal., Inc. v. City of New York, 351 F.3d 602, 604–05 (2d Cir. 2003) (quoting 7 U.S.C. § 136a(c)(5)(D)). "The EPA issues a 'label' for each registered chemical, indicating the manner in which it may be used" which "encapsulates the terms on which a chemical is registered, and its requirements become part of

---

[4] The term pesticide is defined as including any "any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant" which would include herbicides. 7 U.S.C. § 136(t), (u); see Bates v. Dow Agrosciences LLC, 544 U.S. 431, 435 (2005) (Although called an herbicide, they are classified as pesticides for the purposes of FIFRA).

FIFRA's regulatory scheme." <u>No Spray Coal., Inc.</u>, 351 F.3d at 605 (quoting 7 U.S.C. § 136j(a)(2)(G)). FIFRA makes it unlawful "to use any registered pesticide in a manner inconsistent with its labeling." 7 U.S.C. § 136j(a)(2)(G). However, FIFRA does not provide for citizen enforcement suits and enforcement actions may be brought only by specified agencies of federal and state governments." <u>No Spray Coal., Inc.</u>, 351 F.3d at 605; <u>see</u> <u>also</u> <u>Fiedler v. Clark</u>, 714 F.2d 77, 79 (9th Cir. 1983) (FIFRA does not create a private cause of action).

The Court finds that Plaintiff has failed to state a cognizable claim for violation of the FIFRA.

       3.   <u>RICO</u>

Plaintiff brings claims against all defendants alleging violation of RICO. RICO, which was passed in 1970 as Title XI of the Organized Crime Control Act, provides for both criminal and civil liability for certain prohibited activities. <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 545 (9th Cir. 2007).

As relevant here, 18 U.S.C. § 1962 provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C.A. § 1962(c). To state a civil claim under RICO, "a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity,' " <u>Rezner v. Bayerische Hypo-Und Vereinsbank AG</u>, 630 F.3d 866, 873 (9th Cir. 2010) (quoting <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985)), with the conspiracy claim being necessarily dependent upon the existence of the substantive RICO violation, <u>Sanford v. Memberworks, Inc.</u>, 625 F.3d 550, 559 (9th Cir. 2010). Plaintiff must show that the racketeering activity was both a but-for and proximate cause of his injury to have standing to bring a claim. <u>Hemi Group, LLC v. City of New York, N.Y.</u>, 559 U.S. 1, 9 (2010). To meet the proximate cause requirement there must be "some direct relation between the injury asserted and the injurious conduct alleged." <u>Rezner</u>, 630 F.3d at 873 (quoting <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992)). This requires the court to examine the alleged violation to determine if it led directly to plaintiff's injuries. <u>Canyon</u>

County v. Syngenta Seeds, Inc., 519 F.3d 969, 982 (9th Cir. 2008).

The focus of RICO is racketeering activity which is defined "as a number of specific criminal acts under federal and state laws." 18 U.S.C. § 1961(1); Canyon County, 519 F.3d at 972. Two predicate acts within a period of ten years are necessary to show a pattern of racketeering activity. 18 U.S.C. § 1961(5); Canyon County, 519 F.3d at 972. However, two predicate acts are not sufficient for a finding of a violation. Howard v. Am. Online Inc., 208 F.3d 741, 746 (9th Cir. 2000). Citing acts as part of a RICO pattern without proving they are indictable is not sufficient to form the basis of a RICO violation. Howard, 208 f.3d at 748.

Alleging "two 'predicate' acts is not in itself sufficient to satisfy the 'pattern of racketeering' requirement; rather, a plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes." Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)). "Continuity may be established by showing that 'predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" Anderson, 155 F.3d at 505 (quoting H.J. Inc., 492 U.S. at 242). "The relationship criterion may be satisfied by showing that the criminal acts 'have the same or similar purposes, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events.'" Anderson, 155 F.3d at 505-06 (quoting H.J. Inc., 492 U.S. at 240).

While Plaintiff cites a wide variety of statutes and alleges multiple incidents that he claims were predicate acts that constitute a pattern of racketeering activity (SAC at 31-32), "[i]t is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" H.J. Inc., 492 U.S. at 238. "[T]o prove a pattern of racketeering activity [Plaintiff] must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. at 239. For the reasons discussed below, the Court finds that Plaintiff has failed to state a claim under RICO.

///

20

### a. Conspiracy to deprive Plaintiff of rights

Plaintiff contends that Defendants Lakeland Aviation, Erik Hansen, Young's, and J.G. Boswell used fraud, intentional misrepresentation, and negligent conduct to convince the public of Kings County that their actions "were lawful and no intervention was needed to protect the health and welfare of the citizens of America against being sprayed with pesticides" in violation of 18 U.S.C. § 241. (FAC at 31.) Plaintiff argues that Defendants intentionally conspired to deprive him of knowledge of what was being sprayed at the time, how to detox, measures to keep from being exposed in the first instance, and to communicate with each other to keep workers out of the area as required by law. (FAC at 31.) Plaintiff's complaint states that "they all conspired with their attorneys, insurance companies, doctors, pilots and county employees to let things run through without costing them lots of money." (FAC at 31.) Plaintiff contends that their primary workers were kept out of the area and "the designated targets were sent in; then denied their property of work compensation by the signing of unconscionable agreement that they were not injured at work; to get their checks; all so the work comp providers would be free of payments because that illegal contract would be enough to allow stoppage of benefits for latent injuries and allow enough time for the person to get well, give up, die or mentally waste away." (FAC at 33.)

Section 241 provides that "if two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same" they shall be filed or imprisoned not more than 10 years. 18 U.S.C. 241. Plaintiff's first amended complaint fails to allege any injury, oppression, threat, or intimidation to a right or privilege secured to him by the Constitution or laws of the United States. Further, there are no factual allegations sufficient to support a claim that the defendants were engaged in a conspiracy.

"A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997). A defendant must also have been "aware of the essential nature and scope of the

enterprise and intended to participate in it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir.1993) (internal quotation marks omitted). The bare allegations that a conspiracy exists do not provide a basis to infer assent to contribute to a common enterprise. Id.

While Plaintiff alleges that a conspiracy existed, the factual allegations in the complaint are insufficient to state a conspiracy claim. Plaintiff alleges that crop dusting was taking place on July 22, 2014, in the area that he was working and his vehicle was sprayed. When he told his employer, he was informed that it would not hurt him. Plaintiff cites 3 C.C.R. §§ 6618 and 6619 to argue that notice should have been provided prior to and after the chemical application. While Plaintiff alleges that the property owner did not receive or provide notice of the chemical application, his complaint also suggests that notice was provided as he states that "all primary employees were out of the area." (FAC at 33.) Plaintiff contends they conspired to have their primary workers "out of the area; and the designated targets were sent in. . . ." (FAC at 33.)

Plaintiff alleges that Defendant Boswell did not provide proper notice of the chemical application as required by Cal. Code Regs. tit. 3, § 6618(a). Section 6618 requires notice to the employees working on the operator's property, but the notice is not required if the employees will not enter or walk within a 1/4 mile of the filed to be treated. Cal. Code Regs. titl 3, §§ 6618(a)(1)(G)(3),(5)(A). Plaintiff further alleges that Defendant Young's should have provided training or protective equipment. However, to the extent that Plaintiff relies on violation of civil statutes to show a predicate act, RICO predicates are "certain crimes 'chargeable' under state law, § 1961(1)(A), and any offense involving bankruptcy or securities fraud or drug-related activity that is 'punishable' under federal law." RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2096 (2016). The July 22, 2014 crop dusting incident does not allege the type of criminal conduct that RICO was enacted to address. See 18 U.S.C. § 1961(1) ("racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year").

///

Plaintiff contends that the incident was reported to the County Agriculture Department and no investigation took place. (FAC at 18.) However, Plaintiff also alleges that the County Agriculture Department spoke with the crop duster pilot and determined there was no evidence of a violation. (FAC at 38.) While Plaintiff alleges a conspiracy to convince the public that the actions were legal, the complaint is devoid of any factual allegations to support the claim that the defendants conspired regarding the crop dusting incident. Plaintiff's conclusory allegations of a conspiracy are insufficient for the Court to reasonably infer that any conspiracy existed regarding the July 22, 2014 crop dusting incident.

Further, the Court notes that this is the only incident in which Defendants J.G. Boswell Co Inc.; J.G. Boswell Tomato Co.-Kern; J.G. Boswell Tomato Co.-Kings; Erick J. Hansen; H & G Farms; Lakeland Aviation; Tim Niswander; Rusty Lantsberger; and Kings County Agriculture Department were alleged to have been involved in. To state a RICO claim, a plaintiff must allege at least two acts of racketeering that form a pattern of racketeering activity. Anderson, 155 F.3d at 505. Therefore, even if Plaintiff could amend his complaint to add additional factual allegations that the July 22, 2014 incident could qualify as a predicate act, Plaintiff has failed to allege two predicate acts to satisfy the pattern of racketeering requirement. The first amended complaint does not allege a continuing pattern or a relationship among the defendant's activities showing they had the same or similar purposes. The Court recommends that the claims against Defendants J.G. Boswell Co Inc.; J.G. Boswell Tomato Co.-Kern; J.G. Boswell Tomato Co.-Kings; Erick J. Hansen; H & G Farms; Lakeland Aviation; Tim Niswander; Rusty Lantsberger; and Kings County Agriculture Department be dismissed for failure to state a claim.

**b.  Air conditioner incident**

The remainder of Plaintiff's RICO claim arise out of other incidents that occurred during or after his employment with Defendant Young's. While the timing is unclear, Plaintiff later had an incident in his truck where he had chemical exposure from the air conditioner. Plaintiff alleges that "Defendants" used biological weapons to attack him in violation of 18 U.S.C. § 175. Plaintiff also references 18 U.S.C. §§ 229-229(f). As relevant here, section 175 prohibits knowingly developing, producing, stockpiling, transferring, acquiring, retaining, or possessing

any biological agent, toxin, or delivery system for use as a weapon. 18 U.S.C. § 175(a). Section 229 makes it unlawful to develop, produce, acquire, retain, own, possess, or use any chemical weapon. 18 U.S.C. § 229(a).

The first amended complaint alleges that the day after Plaintiff told Paula Watson that he was working undercover for her husband, Zachary Johnson had him drive a truck with a police bar on it that had an odd or chemical smell from the air conditioner. (FAC at 27.) As Plaintiff was driving the truck chemicals came out of the air conditioner injuring his eye and ear. (FAC at 27.) Plaintiff contends that "Defendant Young's used chemical weapons produced and manufactured in their mechanic shop, applied or perfected them, with knowledge and found that they blew out of the air conditioning unit." (FAC at 36.) Then Defendants placed Plaintiff in the truck under the authority of Zachary Johnson, Larry Sailors, and Randy Daniels who had Plaintiff drive the vehicle against his protest. (FAC at 36.)

At the pleading stage, without addressing the plausibility of the claim, the Court shall assume that this will qualify as a predicate offense for RICO purposes.

### c. Workmen's Compensation claim

Plaintiff alleges that he was thereafter treated through his employer's workers compensation plan until December 2014. (FAC at 16.) Ben Barczak was assigned to work on his case. (FAC at 17.) Plaintiff was seen by a doctor who recommended sending Plaintiff to an eye and sinus specialist. (FAC at 28.) After some amount of time, Plaintiff was diagnosed with burning to his face and a benign 5 mm cyst under his eye. (FAC at 17.) Ben Barczak denied a claim. (FAC 17.)

Mr. Aguilar, the Worker's Compensation attorney with Stockwell, Wolverton, Harris, Humphrey, told Plaintiff that he needed to settle the case or he would not receive anything. (FAC at 29.) Mr. Aguilar was working at the advice of Defendant Young's and told Plaintiff that Defendant Young's thought he was faking. (FAC at 20.) Mr. Aguilar sent correspondence to Plaintiff's doctors. (FAC at 17.) Mr. Aguilar had Plaintiff examined by Dr. Leonard who determined that his medical problems were not related to the chemical exposure. (FAC at 17, 29.) Plaintiff also alleges that Dr. Leonard worked with MES Solutions. (FAC at 6.) Dr.

Leonard was not licensed to do business in Clovis, California; and MES Solutions is not licensed to do business in several counties. (FAC at 20-21.) MES Solutions has not sent Plaintiff his medical reports. (FAC at 30.)

Plaintiff contends that communication between the worker's compensation attorney, his employer, and the physicians demonstrate a conspiracy to deny him benefits. However, the communication alleged does not demonstrate anything other than what would be routine in the circumstances. Plaintiff's second amended complaint fails to allege sufficient facts for the Court to reasonably infer that any criminal conspiracy existed.

The allegations in the complaint are insufficient to find that the handling of or denial of Plaintiff's worker's compensation claim was a predicate act under RICO. 18 U.S.C. § 1961(1). Plaintiff fails to state a RICO claim against Defendants Barczak; National Interstate Insurance Co.; Dr. Thomas Leonard; MES Solutions; or Stockwell, Harris, Wolverton, Humphrey.

**d.    Mail fraud**

Plaintiff contends that Defendant Young's conspired through Gabby Manzo, Randy Daniels, Zachary Johnson, Terry Johnson, Tony Cisneros, Alex Manzo, and Jesse Nunez who worked in concert to produce literature, websites, post on Facebook and Craigslist that employees would be hired and receive a bonus for their work with no regard to their employee record, reprimands, attendance, performance or other obligations to receive a reward of ten percent of their gross earnings at the end of the year simply by finishing off the season. (FAC at 34-35.) Plaintiff contends that he does not know that anyone received a bonus. (FAC at 35.) Plaintiff contends that this was wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344. (FAC at 35.)

Section 1341 prohibits using the mail for a scheme or artifice to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1341. "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." Schreiber Distrib. Co. v. Serv-

Well Furniture Co., 806 F.2d 1393, 1399–400 (9th Cir. 1986).

Section 1343 applies to fraud by wire, radio, or television. 18 U.S.C. § 1343.[5] "Similarly, a wire fraud violations consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." Schreiber Distrib. Co., 806 F.2d at 400. "The requirement of specific intent under these statutes is satisfied by the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and this intention is shown by examining the scheme itself." Id. (internal punctuation and citations omitted).

Plaintiff fails to allege any facts by which the Court can reasonably infer that Defendant Young's engaged in mail or wire fraud. Initially, as Plaintiff was advised in the September 14, 2017 screening order, while Rule 8 of the Federal Rules of Civil Procedure generally governs whether a complaint states a claim, where a complaint alleges fraud, Rule 9 of the Federal Rules of Civil Procedure applies. Pursuant to Rule 9, allegations of fraud or mistake, "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. This requires Plaintiff to plead with "more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (internal punctuation and citations omitted). Further, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' " Swartz, 476 f.3d at 764-65 (quoting Haskin v. R.J. Reynolds Tobacco Co., 995 F.Supp. 1437, 1439 (M.D.Fla.1998)).

Plaintiff's allegations regarding mail and wire fraud are not pled with particularity and do not meet the heightened pleading requirement of Rule 9. Plaintiff's vague allegations are not sufficient to alleged the who, what, and where of the alleged fraudulent representations to state a

---

[5] Section 1344 applies to defrauding a financial institution and is not relevant to the claims alleged in the first amended complaint. 18 U.S.C. § 1344.

claim for mail or wire fraud.  Further, Plaintiff bases his allegation upon Defendant Young's representation that if an employee completed the season he would receive a bonus of ten percent of his gross pay.  Plaintiff alleges that he did not receive a ten percent bonus and does not know if any other employee did.  (FAC 35.)  When Plaintiff inquired as to why he did not receive his bonus, Defendant Young's sent him a calendar.  (FAC at 35.)  However, while Plaintiff alleges that he completed the season, he was on worker's compensation until December 2014.  (FAC at 16.)  On screening, the court is to accept the allegations in the complaint as true.  Iqbal, 556 U.S. at 678.  However, the Court is not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Here, while the allegations in the complaint may be sufficient to state a breach of contract claim, there are no facts alleged by which the Court can reasonably infer that Defendant Young's engaged in mail or wire fraud.

The first amended complaint fails to contain sufficient factual allegations to state a claim for mail or wire fraud.  Further, the allegations in the first amended complaint do not demonstrate a "pattern of racketeering activity" by showing that there are related racketeering predicates that amount to or pose a threat of continued criminal activity.  H.J. Inc., 492 U.S. at 239.

### e. Plaintiff alleges a variety of unrelated acts that are insufficient to establish a pattern of racketeering activity

In this instance, Plaintiff has set forth a variety of acts by different defendants alleging that they demonstrate a pattern of racketeering activity.  However, demonstrating a pattern "requires the showing of a relationship between the predicates and of the threat of continuing activity."  Howard, 208 F.3d at 750.  Merely alleging a variety of unrelated acts by different defendants is insufficient to establish a pattern of racketeering activity.  Howard, 208 F.3d at 749.

Here, in addition to the allegations discussed above, Plaintiff alleges various assaults that occurred at work by unrelated individuals, failure to accommodate his disability, and state law

wage and breach of contract claims that would not establish a pattern of racketeering activity. Plaintiff has failed to state a RICO claim against any named defendant in this action.

**D.    Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In this Circuit, a pro se plaintiff should be granted leave to amend unless it is clear that the deficiencies in the complaint cannot be cured by amendment. <u>Broughton v. Cutter Labs.</u>, 622 F.2d 458, 460 (9th Cir. 1980). Leave to amend need not be granted where the court determines that the pleading could not possibly be cured by the allegation of other facts. <u>Lopez</u>, 203 F.3d at 1130.

In this action Plaintiff has been granted an opportunity to amend the complaint, with guidance by the Court. Plaintiff filed a first amended complaint but was unable or unwilling to cure the deficiencies identified in the September 14, 2017 screening order. The Court finds that Plaintiff is unable to allege facts to cure the deficiencies outlined above. Therefore, the Court finds that it would be futile to grant further leave to amend and recommends that the complaint be dismissed without leave to amend. <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

**IV.**

**ORDER TO SHOW CAUSE**

On November 30, 2017, an order issued requiring Plaintiff to appear on December 20, 2017, to show cause why sanctions should not issue for the failure to comply with the September 14, 2017, and October 19, 2017 orders regarding the filing of his amended complaint.

Upon inquiry as to why Plaintiff did not comply with the September 14, 2017, and October 19, 2017 orders, Plaintiff failed to provide any valid excuse. Plaintiff stated that he was unable to find the September 14, 2017 order and had planned to file the amended complaint electronically and then discovered that he was unable to. Further, Plaintiff stated that there were things that he believed needed to be included in his complaint; and therefore, he included them. Based upon the December 20, 2017 hearing and the pleadings filed by Plaintiff in this action, the Court finds that Plaintiff is educated, articulate and well informed in the law for one acting in pro se. Plaintiff received the orders at issue in this order to show cause, was aware of the

requirements set forth in the orders, and failed to comply without any excuse. The Court finds that Plaintiff's failure to comply with the September 14, 2017 and October 19, 2017 orders was willful.

Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action. Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

In determining whether to dismiss an action for failure to comply with a pretrial order, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotations and citations omitted). These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action. Id. (citation omitted).

In this instance the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal. In re Phenylpropanolamine

(PPA) Products Liability Litigation, 460 F.3d at 1226. Plaintiff was ordered to file an amended complaint that did not exceed twenty-five pages and filed an amended complaint that was forty-six pages in length. Additionally, Plaintiff was provided with the legal standards that would apply to his claims and, as discussed above, has failed to cure the deficiencies in his complaint.

Further, Plaintiff was ordered to file his amended complaint within thirty days of October 19, 2017, and despite acknowledging that he was aware of the date that his amended complaint was he failed to file his first amended complaint until November 29, 2017. Plaintiff's failure to comply with the orders of the Court hinders the Court's ability to move this action towards disposition, and indicates that Plaintiff does not intend to diligently litigate this action and will not comply with future orders of this court.

Based on Plaintiff's failure to timely respond to the Court's order, it appears that Plaintiff does not intend to litigate this action diligently and a rebuttable presumption of prejudice to the defendants arises. In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994). This risk of prejudice may be rebutted if Plaintiff offers an excuse for the delay. In re Eisen, 31 F.3d at 1453. Although the delay in this instance was minor, based on Plaintiff's repeated failures to comply with the Court's orders, it does appear apparent that Plaintiff will not abide by future orders to comply which will cause additional delay in this action. Plaintiff was provided with an opportunity to explain his failure to comply, but could not do so. Should the Court allow Plaintiff further opportunity to amend his complaint, Plaintiff's conduct thus far has demonstrated that he will not comply with any order as to the limitations of the pleadings or the time requirements for filing. This will only result in additional delay and prejudice to the defendants. The Court finds this factor weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is outweighed by the factors in favor of dismissal. It is Plaintiff's responsibility to move this action forward; and Plaintiff's actions in this action demonstrate that he does not intend to diligently move this action forward nor does he intend to comply with court orders. In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

Since Plaintiff is proceeding in forma pauperis, the Court finds that he would be unable to

pay monetary sanctions and they would therefore be insufficient to address Plaintiff's failure to comply. Also a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement. <u>Ferdik</u>, 963 F.2d at 1262; <u>Malone</u>, 833 at 132-33; <u>Henderson</u>, 779 F.2d at 1424. The Court's September 14, 2017 order requiring Plaintiff to file an amended complaint expressly stated: "Plaintiff's amended complaint shall be double spaced and use letters no smaller than used in the instant order, Times New Roman 12, and may not exceed twenty-five (25) pages in length;" and "If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed for failure to state a claim." (ECF No. 6 at 15.) Further, the October 19, 2017 order expressly advised, "If Plaintiff fails to file an amended complaint in compliance with this order, the Court shall recommend that this action be dismissed." (ECF No. 8 at 2.) Thus, Plaintiff had adequate warning that dismissal would result from his noncompliance with the Court's order.

The Court recommends that this action should be dismissed as a sanction for Plaintiff's failure to comply with the Court's orders.

## V.

## RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for sanctions pursuant to Rule 11 and request for monetary and non-monetary sanctions, filed November 16, 2017, be DENIED;

2.  Plaintiff's request for monetary sanctions be DENIED; and

3.  Plaintiff's first amended complaint, filed November 29, 2017, be DISMISSED WITHOUT LEAVE TO AMEND for failure to state a claim as amendment would be futile and as a sanction for Plaintiff's failure to comply with court orders.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 27, 2017**                              _____

UNITED STATES MAGISTRATE JUDGE